IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

Vs.                                                    Nos.   05-3393-SAC
01-40086-01-SAC

MALEEK LASHAWN HUGHES,

Defendant.

MEMORANDUM AND ORDER

The defendant has timely filed a motion to vacate, set aside or correct

his sentence pursuant to 28 U.S.C. §  2255 (Dk. 86), and a memorandum in

support of his motion (Dk. 91).  With the government's response (Dk. 93) and the

defendant's reply (Dk. 95) on file, the briefing is complete, and motion is ripe for

decision.

**PROCEDURAL HISTORY**

The defendant was indicted on a single count of possession of a

firearm by a convicted felon in violation of 18 U.S.C. §  922(g).  Prior to trial, the

government filed an information advising that the defendant had three prior violent

felonies or serious drug offenses and that upon the defendant's conviction it would

seek a sentence of not less than fifteen years as prescribed in 18 U.S.C. §  924(e).

In September of 2002, a jury returned a guilty verdict.  The court sentenced the defendant to 188 months which was the low end of the appropriately calculated Guideline sentencing range.  The defendant appealed to the Tenth Circuit which affirmed his conviction and sentence.  The United States Supreme Court denied his petition for certiorari on October 4, 2004.  The defendant timely filed his motion to vacate under 28 U.S.C. § 2255 on October 5, 2005.

**FACTS**

The evidence at trial established the following facts that furnish a necessary background and relevant context for the issues raised in the defendant's § 2255 motion.  On June 5, 2001, officers with the Topeka Police Department went to the residence at 1219 Southeast Lawrence, Topeka, Kansas, to execute a warrant to search for the person of Melvin Ray, an assault rifle used in a recent shooting, and cocaine.  After knocking on the front door and announcing "police," the officers waited on the porch and heard people moving around the house but heard no one coming to the front door.  The officers announced themselves again and then forcibly entered.  They saw in the hallway the defendant hurriedly moving away from the back bedroom and colliding with a second person later identified as Joshua Coller who was coming from the bathroom.  The defendant and Coller were ordered to the ground, and they complied.  Hearing the toilet running, officers went

2

to the bathroom where they observed in the toilet a plastic bag containing what appeared to be marijuana and another knotted plastic bag, the kind of packaging commonly used with crack cocaine.

Officers handcuffed the defendant, Coller, and Darlene Rias and placed them on the front porch.  In their search of the residence, officers found a black Hi-Point .45 caliber pistol under some clothing in the back bedroom from which the defendant had been seen coming when officers entered the residence. Besides seizing a loaded magazine for this pistol, officers found a single bullet on a table in the living room.

Officers first interviewed Coller and Rias.  Detective Brian Hill with the Topeka Police Department questioned the defendant around 12:40 p.m. in the kitchen of the residence.  The defendant received the *Miranda* warning and indicated he understood his rights and would talk with Detective Hill.   In their interviews, neither Coller nor Rias had admitted owning the pistol.  Detective Hill asked the defendant if the handgun had been involved in any recent shootings, and the defendant said it had not.  The defendant told Detective Hill that he owned this gun and described it for Hill as a black Hi-Point .45-caliber semi-automatic pistol. Detective Hill asked if the defendant had ejected a round from the handgun in the living room and then took it into the bedroom before officers entered the residence.

3

The defendant conceded that Hill was correct in his surmise.  The defendant hesitantly admitted that he knew his possession of the firearm would be a problem because he was a felon.

At trial, the defendant called one witness, Darlene Rias.  She is the defendant's cousin and was present on June 5, 2001, when officers executed the search warrant on 1219 Southeast Lawrence.  Ms. Rias rented this residence. Officers interviewed her and arrested her upon finding marijuana in her purse.  She testified at trial that she never saw the defendant with the seized handgun and that she owned the gun in order to protect herself and family.  She described her purchase of the handgun as occurring in the parking lot of a local bar with the seller being a "friend" whom she did not know by name.  Ms. Rias admitted she did not tell the officers on June 5, 2001, or anytime before trial that the pistol belonged to her.

**ISSUES**

1)  Whether the evidence at trial is sufficient to sustain his conviction?

2)  Whether the trial court erred in limiting the testimony of Darlene Rias?

3)  Whether trial counsel was ineffective in failing to file motion to suppress his post-arrest statements given to Detective Hill?

4)  Whether trial counsel was ineffective in not impeaching Detective Hill with his testimony from suppression hearing concerning the defendant's statements?

4

5)  Whether trial counsel was ineffective in not requesting a mistrial based on the jury's written notes indicating that they could not reach a unanimous verdict?

6)  Whether trial court erred in using his prior juvenile conviction to enhance his sentence and whether trial counsel failed to challenge adequately his prior Illinois conviction used to enhance his sentence?

7)  Whether appellate counsel was ineffective for failing to raise insufficiency of evidence and the denial of the motion to suppress?

## § 2255 STANDARDS

"'Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255.'" *United States v. Walters*, 163 Fed. Appx. 674, *677-678 (10th Cir. 2006) (quoting *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989)).  This rule does not foreclose a defendant from raising issues that differ from those pursued on direct appeal.  *United States v. Gordon*, 172 F.3d 753, 756 (10th Cir. 1999).  Claims raised and decided on direct appeal, however, may not be reasserted in a § 2255 motion.

At the same time, "[re]view under § 2255 is not an alternative to appellate review for claims that could have been presented on direct appeal but were not." *United States v. Magleby*, 420 F.3d 1136, 1139 (10th Cir. 2005), *cert. denied*, 126 S. Ct. 1879 (2006). Consequently "failure to raise an issue either at trial or on direct appeal imposes a procedural bar to habeas review." *United States v.*

5

*Barajas-Diaz*, 313 F.3d 1242, 1245 (10th Cir. 2002). To overcome this procedural bar, the movant must establish either good cause for not raising the issue earlier and resulting actual prejudice to his defense from the court's failure to consider this claim, or a fundamental miscarriage of justice from not considering the claim. *United States v. Cervini*, 379 F.3d 987, 990 (10th Cir. 2004), *cert. denied*, 544 U.S. 904 (2005); *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996). Good cause may be met by showing a claim that "was so novel that its legal basis [was] not reasonably available to counsel" or "by showing that counsel rendered constitutionally ineffective assistance." *United States v. Wiseman*, 297 F.3d 975, 979 (10th Cir. 2002) (citations and quotation omitted).

The defendant here contends he was denied effective assistance of counsel both at trial and on appeal. "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Williamson v. Ward*, 110 F.3d 1508, 1513-14 (10th Cir. 1997) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986)). As laid out in *Strickland v. Washington*, 466 U.S. 668 (1984), it is the defendant's burden to show that (1) counsel's performance was deficient, that is, "counsel's representation fell below an objective standard of reasonableness," *id.* at 687-88, and that (2) counsel's

6

deficient performance prejudiced the defense, that is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694.[1]  In evaluating claims of this nature, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689.  A counsel's failure to advance a futile argument will not sustain a claim that the defendant was denied effective assistance of counsel.  *See Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999).

A court must grant an evidentiary hearing on the defendant's motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U .S.C. § 2255.  No hearing is required where the factual matters raised by the defendant's § 2255 petition may be resolved

---

[1]Because the defendant must demonstrate both *Strickland* prongs–unreasonable representation and actual prejudice--to establish his claim, 466 U.S. at 692, a failure to prove either one is dispositive of the § 2255 motion. *Smith v. Robbins*, 528 U.S. 259, 286 n. 14 (2000)("The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'") (quoting *Strickland*, 466 U.S. at 697) .

on the record before the court.  *See United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988).  "To be entitled to an evidentiary hearing . . . the [defendant] must 'allege[ ] facts which, if prove[n], would entitle him to relief.'" *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996).  "[T]he allegations must be specific and particularized, not general or conclusory." *Id*.

The court finds that a hearing on the defendant's motion is not necessary. The files and the records in this case fully address the issues raised in the defendant's motion and conclusively show that he is not entitled to the relief he seeks. The court also finds that the defendant has not alleged specific and particularized facts in support of his claims. A hearing is not required on the defendant's motion.

*Sufficiency of the Evidence*

The defendant did not present this issue on direct appeal, though it was plainly available to him.  Thus, the defendant is procedurally barred from seeking review under § 2255 of this issue absent a showing of cause and prejudice. The defendant claims his appellate counsel was ineffective in not appealing this issue.  When the basis for the ineffective assistance claim is the failure to raise an issue, the court evaluates the merits of the omitted issue.  *See Jones v. Gibson*, 206

8

F.3d 946, 959 (10th Cir.), *cert. denied*, 531 U.S. 998 (2000).

The merits of the defendant's claim turns on "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When officers entered the residence, they saw the defendant coming from the bedroom where the officers subsequently found the handgun. The floor of the bedroom had clothes strewn about it, and the pistol was found under one pile of clothes. Ammunition for the handgun was found in the living room. The presence of ammunition in one room near the front door and the weapon in a different room farther from the front door and the impromptu and temporary manner in which the weapon was stored and hidden are circumstances indicating the weapon had been hurriedly taken from one room and hidden in a more remote room in response to the police knocking on the door. When first seen by the officers, the defendant was the person in closest proximity to the weapon and was the only person moving away from the room where the weapon was located. Officers interviewed all three occupants at the scene. The defendant identified the firearm by color, make and caliber and then confessed to owning the pistol and hiding it in the bedroom. The other two occupants did not tell officers that they owned or possessed the firearm. While

9

Darlene Rias testified at trial to owning the pistol, she was effectively cross-examined on this issue, including her failure to assert ownership during her post-arrest statement or anytime prior to trial.  It is exclusively the province of the jury to determine the credibility of witnesses, the weight to be accorded to the evidence presented, the reasonable inferences to be drawn therefrom, and the conclusions to be reached.  *United States v. McKissick*, 204 F.3d 1282, 1289-90 (10th Cir. 2000). That the jury chose to believe one witness or type of evidence over another is the sole province of the jury.  The record reveals ample evidence to sustain the defendant's conviction.  The failure to raise this issue on appeal did not constitute ineffective assistance of counsel.

### *Error in limiting Ms. Rias's testimony*

The defendant argues that Ms. Rias "was not allowed to tell her full story as to what happened on the day of the raid at her house."  (Dk. 86).  He contends his attorney should have objected at trial and appealed the ruling.  The defendant, however, fails to describe the testimony or its substance that is the subject of his contention.  He does not identify the court ruling at issue or how any such ruling could have been in error.  As reflected in the trial transcript, defense counsel approached the bench wanting to elicit hearsay testimony from Ms. Rias and argued for its admission, the government's objection to the hearsay testimony

10

was sustained, and the defense counsel made a proffer to preserve the record for appeal.  (Dk. 75, pp. 442-448).  The appellate counsel's decision not to raise this issue on appeal was reasonable and justified, for the hearsay testimony was plainly offered to prove the truth of what had been said and did not qualify as a party admission or for a hearsay exception.[2]

### Motion to Suppress

The defendant contends his trial counsel was ineffective in not arguing for suppression of his statement based on Detective Hill's testimony at the suppression hearing and his appellate counsel was ineffective in not appealing the district court's order denying the suppression motion.  His trial counsel filed a motion to suppress (Dk. 15) and argued the motion at hearing.  Counsel zealously challenged the voluntariness of the defendant's statement arguing a *Miranda* violation and coercion.  The only witness at the suppression hearing was Detective Brian Hill who testified that he gave the *Miranda* warning prior to questioning and that he did not make the coercive statement which the defendant had alleged.  The

---

[2]"[I]n analyzing an appellate ineffectiveness claim based upon the failure to raise an issue on appeal, we look to the merits of the omitted issue."  *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (quotation omitted).  If the omitted issue is meritless, counsel's omission does not constitute deficient performance. *Id*.

district court found Detective Brian Hill's testimony to be credible and the

government to have sustained its burden of proving the defendant's voluntary,

intelligent and knowing waiver of his *Miranda* rights.  The defendant's § 2255

memoranda offer no legal arguments and cite nothing of record to even suggest a

possible error in the district court's ruling.  In short, the defendant has not carried

his burden of proving his trial or appellate counsel were constitutionally ineffective

in their handling of this issue.

### Impeachment of Detective Hill's Trial Testimony

According to the defendant, Detective Hill testified at the suppression

hearing that during the post-arrest interview the defendant "wouldn't say the gun

was his."  (Dk. 95, ¶ 5; Dk. 91, p. 1).  The defendant complains his trial counsel

should have impeached Detective Hill at trial with this prior testimony from the

suppression hearing.

The transcript of the suppression hearing transcript shows Detective

Hill's testimony was not as favorable to the defendant as he now argues.  Detective

Hill testified that the defendant "was hesitant to say it [the gun] was his.  He– he

was talking; he just didn't say it was his."  (Dk. 31, p. 26:12-13).  This testimony is

followed by Detective Hill's description of the remaining interview which

culminated in the defendant admitting possession of the gun.  In short, Detective

Hill testified at the suppression hearing that the defendant was initially reluctant to claim possession but eventually admitted possession during the same interview. (Dk. 31, pp. 26-27).

Trial counsel's decision against using this prior testimony in an effort to impeach Detective Hill was not an unreasonable trial strategy. Detective Hill's trial testimony about the defendant's statement and admission did not differ materially from his testimony at the suppression hearing. On both occasions, Detective Hill said the defendant admitted possessing the gun after some initial reluctance. Had defense counsel asked Detective Hill only about his prior testimony on the defendant's reluctance in the first part of the interview, the jury also would have learned about the rest of Detective Hill's earlier testimony. Because the jury would have seen that Detective Hill had not said anything materially different at the earlier suppression hearing and, in fact, his testimony on both occasions was actually consistent in this regard, this line of questioning would have had no impeachment value. The defendant's contention is devoid of merit.

*Mistrial*

The defendant complains his trial counsel was ineffective in not moving for a mistrial when the jury sent out notes indicating it was unable to reach a unanimous decision. The jury commenced their deliberations at 3:00 p.m. on

13

September 19, 2002, and sent out a written question just over an hour later asking about "constructive possession."  After the court promptly answered the question, the jury went home for the evening having deliberated less than two hours.  Upon arriving the next morning, the jury immediately sent out a second question seeking additional clarification on constructive possession.  Before this question could be answered, the jury wrote a note indicating they were unable to reach a unanimous verdict.  At this point, the jury had deliberated less than four hours over both days.  The jury was given the court's answer to the second question and an opportunity to consider it.  Less than an hour later, the jury sent a note confirming that they were still unable to reach a unanimous verdict.  Over the defendant's objection, the court called the jury into courtroom and read an *Allen* instruction to the jury.  The defense counsel proposed rereading the entire set of jury instructions and not just a restatement of the *Allen* instruction.  The *Allen* instruction was read and copies of this instruction provided the jury at its request just before the noon hour.  At 1:30 p.m., the jury informed the court of having reached a verdict which was returned in open court at 1:40 p.m.

The defendant provides no argument or evidence in proof of prejudice.  Nor does the record offer anything from which to argue that the trial court could have abused its discretion in giving the *Allen* charge in the first place

14

rather than declaring a mistrial.  *See United States v. McElhiney*, 275 F.3d 928, 940 (10th Cir. 2001) (The giving of an *Allen* charge is a matter vested in the trial judge's sound discretion).  The *Allen* instruction was used here to avoid a mistrial by properly urging all jurors to reconsider the evidence and their views in light of what their fellow jurors have expressed.  *See Darks v. Mullin*, 327 F.3d 1001, 1013 (10th Cir.), *cert. denied*, 540 U.S. 968 (2003).  The Tenth Circuit here found that the *Allen* charge "was not 'impermissibliy coercive' and did not 'undermine the integrity of the deliberation process.'"  (Dk. 82, p. 6).  There is no reasonable probability of a different result if defense counsel had asked for a mistrial, nor was the failure to do so prove the defendant was denied effective assistance of counsel.

*Prior Illinois Conviction*

The presentence report showed the defendant had a prior Illinois conviction in 1996 at the age of 19 for the manufacture or delivery of one to fifteen grams of cocaine.  The defendant objected to the armed career criminal enhancement at U.S.S.G. § 4B1.4(a) arguing that this Illinois conviction was not a "serious drug offense" as the statutory offense did not carry a maximum term of imprisonment of ten years or more.  After conducting two hearings and reviewing the certified copies of the defendant's Illinois conviction, the sentencing court found that the defendant was convicted of a class one felony under Illinois law that

15

carried a term of imprisonment from four to fifteen years.  The sentencing court accordingly applied the armed career criminal enhancement and imposed a term of 188 months.  The defendant appealed the use of this conviction to the Tenth Circuit which reviewed the sentence enhancement *de novo* examining the record and documentation to "determine the legitimacy" of the sentence. (Dk. 82, p. 11).  The panel concluded "that the district court did not err in concluding that the defendant in this case was convicted in the Illinois proceeding for the manufacture and delivery of cocaine and hence was correctly determined to be subject to the 'armed career criminal' enhancement.'"  *Id*.

In his § 2255 motion, the defendant contends that his Illinois conviction was a "juvenile conviction," that this conviction was not valid or constitutional on several grounds, and that his trial counsel was ineffective in not pursuing these challenges.  The record from the sentencing hearing plainly establishes that the defendant was not a juvenile when he committed the offense and that he was prosecuted as an adult.  In a federal court sentencing, a defendant generally may not challenge the constitutionality of a prior state conviction being used as part of a sentencing enhancement unless the constitutional challenge is based on a violation of the right to counsel.  *See Custis v. United States*, 511 U.S. 485, 487 (1994); *United States v. Tolase-Cousins*, 440 F.3d 1237, 1245 (10th Cir.

16

2006).  The defendant explains that he has written the Circuit Court of Cook

County, Illinois, asking for certain court documents but that he has not received the

requested documents, and he wants this court to reserve ruling until his pending

request is met.  There is no reason to delay a ruling as the record is complete on

this issue.  At the sentencing in the instant case, certified copies of the Illinois court

proceedings were admitted which establish that an attorney, an assistant public

defender with Cook County, Illinois, entered an appearance in the Illinois case and

represented the defendant in those proceedings.  The defendant is unable to prove

he was prejudiced or denied effective representation because these futile arguments

were not made.

　　　　　IT IS THEREFORE ORDERED that the defendant's motion to

vacate, set aside or correct his sentence pursuant to 28 U.S.C. §  2255 (Dk. 86) is

denied.

　　　　　Dated this 15th day of June, 2006, Topeka, Kansas.


　　　　　　　　　s/ Sam A. Crow
　　　　　　　　　Sam A. Crow, U.S. District Senior Judge

17